UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                                                      :

10110 GROUP, LLC D/B/A/ BRANDON CENTER    :
HOTEL,                                                           :

                        Plaintiff,       :      23-CV-7179 (JMF)

             -v-              :      MEMORANDUM OPINION
                                                            :          AND ORDER
MT. HAWLEY INSURANCE COMPANY et al.,    :

                      Defendants.     :

------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiff 10110 Group, LLC owns a hotel in Tampa, Florida, called the Brandon Center Hotel, which was insured by Defendants Mt. Hawley Insurance and Certain Underwriters at Lloyd's London. *See* ECF No. 1-3, at 6. In October 2022, Plaintiff submitted a claim to Defendants for damages allegedly caused by Hurricane Ian on September 28, 2022. *See id.*; ECF No. 57-2, at 2; Following inspections by an independent adjuster, an engineer, a building consultant, and a roofing consultant, Defendants denied the claim on the ground that the hotel had not been damaged due to the hurricane and that some damages resulted from excluded causes of loss, including wear and tear, defective construction or lack of maintenance. *See* ECF No. 57-4, at 2-10. This lawsuit, seeking coverage, followed.

      Now pending are Defendants' motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment and motion, pursuant to Rule 702 of the Federal Rules of Evidence, to exclude in part the testimony of Plaintiff's damages expert, Ronald A. Patella. *See* ECF Nos. 55, 63. On the former, Defendants seek rulings on two discrete issues: (1) whether New York law applies (in which case, Plaintiff would not be entitled to attorney's fees

and costs under Florida law); and (2) whether Plaintiff is entitled under the insurance policy (the "Policy") to recover an amount its expert characterizes as "continuing normal operating expenses" for the period during which, according to Plaintiff, the hotel had not fully resumed operations.  For the reasons that follow, the Court agrees with Defendants that New York law applies and that, given the circumstances of this case, Plaintiff is not entitled to recover its "continuing normal operating expenses."  It follows that Mr. Patella's testimony regarding his calculation of "continuing normal operating expenses" is irrelevant and must be excluded.  Accordingly, and for the reasons that follow, Defendants' motions are GRANTED in full.

A.  **Choice of Law**

The Court need not dwell long on the first issue raised by Defendants, concerning choice of law.  The Policy provides as follows:

> All matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

ECF No. 57-1 ("Policy"), at 94.  As several other Courts in this District have held, that language plainly mandates application of New York law.  *See, e.g.*, *HKB Hosp. LLC v. Mt. Hawley Ins. Co.*, No. 23-CV-372 (JPO), 2024 WL 4349508, at *2 (S.D.N.Y. Sept. 30, 2024); *Ram Krishana, Inc. v. Mt. Hawley Ins. Co.*, No. 22-CV-3803 (JLR), 2024 WL 1657763, at *3-4 (S.D.N.Y. Apr. 17, 2024); *CBKZZ Inv. LLC v. Renaissance Re Syndicate 1458 Lloyds*, No. 22-CV-10672 (AS), 2024 WL 728890, at *1-2 (S.D.N.Y. Feb. 22, 2024).  Plaintiff's efforts to manufacture ambiguity — based on the placement of the "notwithstanding" clause and references to Florida law elsewhere in the Policy, *see* ECF No 60 ("Pl.'s Opp'n"), at 8-9 — are unavailing.

Because New York law applies, it is undisputed that Plaintiff is not entitled to statutory attorneys' fees and costs under Florida law. *See* ECF No. 56 ("Def.'s Mem."), at 15.[1] Accordingly, Defendants must be and are GRANTED summary judgment on that front.

**B. Recovery of "Continuing Normal Operating Expenses"**

The next issue raised by Defendants concerns Plaintiff's calculation of its covered losses under the Policy. As relevant here, the Policy provides that Defendants will "pay for the actual loss of Business Income [that Plaintiff] sustain[s] due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration.'" Policy 24; *see also id.* at 6 & n.* (providing that Business Income / Rental Value losses will be valued based on the "Actual Loss Sustained"). "Business Income" is, in turn, defined as:

> a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and
>
> b. Continuing normal operating expenses incurred, including payroll.

*Id.* at 24. Elsewhere, in a section titled "Resumption Of Operations," the Policy also adds: "We will reduce the amount of your . . . Business Income loss . . . to the extent you can resume your 'operations,' in whole or in part, by using damaged or undamaged property." *Id.* at 29.

Plaintiff retained an expert, Ronald Patella, to calculate its damages. *See* ECF No. 57-10 ("Patella Dep."), at 10. To determine the total lost "business income," Patella made two calculations. First, he calculated the "net income" that was allegedly lost due to the storm during a twenty-one-week period as $142,260. Patella Dep. 17, 23-24. He arrived at this number by

---

[1] Defendants assert that Plaintiff "does not dispute that New York law precludes recovery of attorney's fees and costs in bringing the action," ECF No. 62 ("Def.'s Reply"), at 1, but, in actual fact, Plaintiff implies that it might be entitled to $80 in fees under N.Y. Comp. Codes R. & Regs. 11 § 65-3.10(a), *see* Pl.'s Opp'n 12 n.6. Defendants do not make any argument with respect to Plaintiff's entitlement *vel non* to such fees, so the Court does not address the issue.

3

taking the rooms that were taken out of commission, multiplying each room's vacant days by its daily rental rate, and then subtracting the expenses the hotel saved by not having to serve and maintain these rooms. *See* ECF No. 57-11 ("Patella Rep."), at 7; Patella Dep. 20-32. Second, Patella calculated the hotel's "continuing normal operating expenses" for the twelve-month period following the hurricane as $1,411,961. He arrived at that number by adding together all of the hotel's operating expenses — including "property taxes," "management fees," ordinary "room expenses," and "utilities." *See* Patella Rep. 8; Patella Dep. 33-42. Patella calculated the total loss of "business income" to be the combination of these two numbers, or $1,554,221. *See* Patella Rep. 6. Defendants contend that Patella's calculation of "continuing normal operating expenses" should be excluded from Plaintiff's damages altogether. *See* Def.'s Mem. 21.

The Court agrees. First, that conclusion flows from the plain language of the Policy, which states repeatedly that Business Income is to be valued based on "actual loss," Policy 6, 24, that is "sustain[ed] due to the necessary 'suspension' of [] 'operations,'" *id.* at 24. That point is underscored by the language providing for a reduction of Plaintiff's "Business Income loss . . . to the extent [Plaintiff] can resume [its] 'operations,' in whole or in part." *Id.* at 29. The upshot of these provisions is that Plaintiff is entitled only to its "actual loss" of Business Income "due" to its alleged suspension of operations as a result of the hurricane. *See, e.g.*, *Polymer Plastics Corp. v. Hartford Cas. Ins. Co.*, No. 3:05-CV-143 (ECR) (VPC), 2006 WL 8429774, at *6 (D. Nev. Sept. 26, 2006) (construing similar language to "make it clear that the parties only intended to cover the actual loss of business income" and to "reveal a general purpose of compensating [the insured] for actual losses sustained, but not allowing for more than actual losses to be recovered"), *aff'd*, *Polymer Plastics Corp. v. Hartford Cas. Ins. Co.*, 389 Fed. App'x 703, 706 (9th Cir. 2010) (summary order). Given that Plaintiff continued to operate in the black during

the period of restoration — that is, continued to generate sufficient revenue to cover its normal operating expenses during that period — those expenses cannot be described as Plaintiff's "actual loss[es]," let alone "actual loss[es] . . . *due to*" the suspension of operations. Policy 24 (emphasis added).

More specifically, Patella's calculation would, in effect, require Defendants "to pay twice for continuing operating expenses," giving Plaintiff "more than its 'actual loss of business income,'" *id.*, and violating the cardinal rule that an insurance "policy should not be interpreted to put the insured in a better economic position from having had its business interrupted than it would have occupied had there been no interruption of its business operations," *Polymer Plastics Corp.*, 389 Fed. App'x at 706 (internal quotation marks omitted). The calculation required by the Policy for "actual loss of business income" has three elements related to the covered period: *expected* profit, *actual* expenses, and *actual* revenue. The first element, expected profit, is what the Policy calls "net income." *See* Policy 24 (defining "Net Income" as "Net Profit or Loss . . . that would have been earned or incurred"). But Patella calculated "net income" as only the profits Plaintiff lost based on vacant rooms, *see* Patella Rep. 7; Patella Dep. 26, without including the profits Plaintiff both expected and received from the rooms that were still rented, *compare* Patella Rep. 7 (showing "net income" as equal to lost profits from vacant rooms), *with id.* at 9-11 (showing actual profits). Patella thus calculated "net income" as the difference between the amount Plaintiff expected to profit during the period and the amount Plaintiff actually profited during the period. In other words, he calculated "net income" as expected profit plus actual expenses minus actual revenue, thereby incorporating all three elements of lost "business income." To award Plaintiff its "continuing operating expenses" on top of its "net

5

income" would therefore be to permit double recovery.  Plainly, "[s]uch an interpretation [of the Policy] is not reasonable."  *Polymer Plastics Corp.*, 2006 WL 8429774, at *6.

The Court's conclusion that, given Patella's calculation of "net income," Plaintiff cannot separately recover its "continuing normal operating expenses" is consistent with the conclusions of courts that have considered the same or nearly the same policy language in similar circumstances.  *See, e.g.*, *Polymer Plastics Corp.*, 389 Fed. App'x at 706; *Polymer Plastics Corp.*, 2006 WL 8429774, at *6; *Dezine Six, LLC v. Fitchburg Mutual Ins. Co.*, No. 3:20-CV-7964 (BRM) (DEA), 2021 WL 1138146, at *4 (D.N.J. Mar. 25, 2021); *Legier & Co., APAC v. Travelers Indem. Co. of Conn.*, No. 9-CV-6674 (AJM), 2010 WL 1731202, at *2 (E.D. La. Apr. 28, 2010); *see also HTI Holdings, Inc. v. Hartford Cas. Ins. Co.*, No. 10-CV-6021 (AA), 2011 WL 6205903, at *7 (D. Or. Dec. 8, 2011); *Island Concepts, LLC v. Certain Underwriters at Lloyd's, London*, No. 13-CV-6725 (SSV), 2014 WL 5524379, at *8 (E.D. La. Oct. 31, 2014). Plaintiff relies instead on *Mullins v. New York Marine & Gen. Ins. Co.*, No. 17-CV-2518 (JST), 2017 WL 6539800 (N.D. Cal. Dec. 21, 2017), and *Amerigraphics, Inc. v. Mercury Cas. Co.,* 107 Cal. Rptr. 3d 307 (Cal. Ct. App. 2010).  *See* Pl.'s Opp'n 19-20.  But *Mullins* and *Amerigraphics* address a fundamentally different issue — the effect on an insured's recovery if the "net income" expected during the covered period was negative.  *See, e.g.*, *Mullins*, 2017 WL 6539800, at *4. Thus, their holdings — that "net income," if negative, should be excluded entirely rather than used to "offset" the amount otherwise owed, *see id.* — have no implications for the issue presented here: whether, in essence, Plaintiff should be paid twice for its "continuing normal operating expenses."  To the extent that *Mullins* and *Amerigraphics* say otherwise and are not distinguishable on this basis, *see, e.g.*, *id.* at *5 (rejecting the argument that the court should not allow the insured to "recover more in insurance proceeds after the interruption than it would

6

have earned had the business kept operating"), the Court declines to follow them for the reasons discussed above.

In sum, the Court agrees with Defendants that Plaintiff is limited to recovering as damages its "actual loss[es]" of "Business Income" and that that means excluding the amount Patella separately calculated as "continuing normal operating expenses."

### C. Patella's Testimony Regarding "Continuing Normal Operating Expenses"

That leaves Defendants' motion, pursuant to Rule 702, to exclude Patella's testimony "on the issue of Plaintiff's alleged loss of 'continuing normal operating expenses' and the related opinion and calculation of . . . 'continuing normal operating expenses.'" Def.'s Mem. 3. To be admissible under Rule 702, expert testimony must "both rest[] on a reliable foundation and [be] relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The latter requirement means that, among other things, a plaintiff's expert's "damages opinions must correspond to [the p]laintiffs' theory of liability." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB), 2022 WL 14863110, at *23 (E.D.N.Y. Oct. 26, 2022); *see, e.g.*, *Golden Unicorn Enters., Inc. v. Audible, Inc.,* 682 F. Supp. 3d 368, 380 (S.D.N.Y. 2023). In light of the Court's conclusion above that Plaintiff cannot recover "continuing normal operating expenses," Patella's testimony regarding such expenses fails that test as it is, by definition, "irrelevant" to Plaintiff's claim "and will not assist the trier of fact." *Golden Unicorn Enters.,* 682 F. Supp. 3d at 380; *accord Santa Fe Surgery Ctr., LLC v. Sentinel Ins. Co.*, No. 19-CV-262 (JSM), 2020 WL 6018871, at *3 (M.D. Fla. Oct. 7, 2020). (Notably,

does Plaintiff does not even attempt to argue otherwise.)  It follows that Defendants' motion to exclude that portion of Patella's testimony must be and is GRANTED.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment and motion to exclude in part Patella's testimony are GRANTED.  Unless and until the Court orders otherwise, the parties shall submit their proposed Joint Pretrial Order and associated materials (in accordance with Section 5 of the Court's Individual Rules and Practices in Civil Cases, available at https://www.nysd.uscourts.gov/hon-jesse-m-furman) **within thirty days of the date of this Memorandum Opinion and Order**.  (The Court will schedule a trial date — or a conference to discuss a trial date — after reviewing the parties' submissions.)

In the meantime, the Court is of the view that the parties should try to settle this case without the need for a trial that would be expensive, risky, and potentially embarrassing to both sides.  To that end, the Court directs the parties to confer immediately about the prospect of settlement and conducting a settlement conference before Magistrate Judge Katherine H. Parker (or before a mediator appointed by the Court or retained privately).  The parties shall appear for a pretrial teleconference to discuss (1) settlement; (2) Defendants' unopposed (albeit arguably untimely) January 28, 2025 letter motion, *see* ECF No. 63; and (3) other pretrial matters on **February 13, 2025**, at **3:45 p.m**.  The parties should join the conference by calling the Court's dedicated conference line at (855) 244-8681 and using access code 2303 019 3884, followed by the pound (#) key.  When prompted for an attendee ID number, press the pound (#) key again. Counsel should review and comply with the procedures for telephone conferences set forth in the

---

[2]   In light of that conclusion, the Court need not and does not reach Defendants' arguments concerning the length of the period for which Patella calculated Plaintiff's "continuing normal operating expenses."  *See* Def.'s Mem. 19, 22.

Court's Individual Rules and Practices for Civil Cases, including Rule 3(B)(i), which requires the parties, **no later than twenty-four hours before the conference**, to send a joint email to the Court with the names and honorifics (e.g., Mr., Ms., Dr., etc.) of counsel who may speak during the teleconference and the telephone numbers from which counsel expect to join the call.

    The Clerk of Court is directed to terminate ECF Nos. 55 and 63.

    SO ORDERED.

Dated: February 6, 2025  
       New York, New York

                                          JESSE M. FURMAN  
                                        United States District Judge